# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| **KIZZY BLACKMON,** | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Case No. 2:20-cv-00741-CWB |
| | ) |
| **KILOLO KIJAKAZI,**[1] | ) |
| **Acting Commissioner of** | ) |
| **Social Security,** | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION AND ORDER**

**I.     Introduction and Administrative Proceedings**

Kizzy Blackmon ("Plaintiff") filed an application for Disability Insurance Benefits under Title II of the Social Security Act on April 5, 2018 wherein she alleged a disability onset date of October 1, 2017 due to diabetes, high blood pressure, vertigo, stomach problems, arthritis, thyroid problems, gallbladder problems, and a cyst on her spleen.  (Tr. 15, 68-69, 79, 142, 162).[2] The claim was denied at the initial level on May 17, 2018, and Plaintiff requested *de novo* review by an administrative law judge ("ALJ").  (Tr. 15, 80, 86).  The ALJ subsequently heard the case on October 22, 2019, at which time live testimony was given by Plaintiff (Tr. 37-61) and by a vocational expert (Tr. 61-66).  The ALJ took the matter under advisement and issued a written decision on November 27, 2019 that found Plaintiff not disabled.  (Tr. 15-31).

---

[1]  Kilolo Kijakazi became Acting Commissioner for the Social Security Administration on July 9, 2021 and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2]  References to transcript pages are denoted by the abbreviation "Tr."

The ALJ's decision contained the following enumerated findings:

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2019.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of October 1, 2017 through her date last insured of March 31, 2019 (20 CFR 404.1571 *et seq*.).

3. Through the date last insured, the claimant had the following severe impairments: advanced severe sensorimotor polyneuropathy, fractured toe on the right foot, diabetes type 2, benign paroxysmal vertigo, diabetic gastroparesis, vitreous hemorrhage bilateral, age-related bilateral cataract and obesity (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except lift/carry/push/pull twenty pounds occasionally and ten pounds frequently; stand/walk for two hours in an eight hour workday; and sit for six hours. The claimant can occasionally climb ramps/stairs; and occasionally stoop, kneel, crouch, crawl, and balance. The claimant can occasionally push/pull using the bilateral lower extremities. The claimant can occasionally operate foot controls with the bilateral lower extremities. The claimant can ambulate throughout the workplace with an ankle brace or a cane while carrying small objects in the free hand. The claimant can frequently handle, finger, and feel bilaterally. The claimant can avoid ordinary workplace obstacles such as boxes. The claimant must avoid all exposure to unprotected heights or dangerous moving machinery. The claimant will need to alternate between sitting and standing in thirty minute increments while remaining on task.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on August 12, 1978 and was 40 years old, which is defined as a younger individual age 18-44, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from October 1, 2017, the alleged onset date, through March 31, 2019, the date last insured (20 CFR 404.1520(g)).

(Tr. 17, 18, 19, 23, 29, 30, 31).

On July 17, 2020, the Appeals Council denied Plaintiff's request for review (Tr. 1-5), thereby rendering the ALJ's decision the final decision of the Commissioner. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

On appeal, Plaintiff asks the court to reverse the final decision and to remand for a new hearing and further consideration. (Doc. 14 at p. 15). As contemplated by 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to entry of final judgment by a United States Magistrate Judge (Docs. 9 & 10), and the undersigned finds that the case is now ripe for determination pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Upon consideration of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the final decision is due to be AFFIRMED.

## II. Standard of Review and Regulatory Framework

Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a

reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.") (citations omitted).  The court thus may reverse the ALJ's decision only if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied.  *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  Despite the deferential nature of its review, however, the court must look beyond those parts of the record that support the decision, must view the record in its entirety, and must take account of evidence that detracts from the evidence relied on in the decision. *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *see also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3]  To make such a determination, the ALJ employs a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520 & 416.920.

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?

(4) Is the person unable to perform his or her former occupation?

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

>(5) Is the person unable to perform any other work within the economy?
>
>An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the burden of proof from step one through step four. *Id*. At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do so, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE") to yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*. at 1239-40.

---

[4] *McDaniel* is an SSI case. Nonetheless, the same sequence applies when evaluating claims for disability insurance benefits brought under Title II. SSI cases arising under Title XVI therefore are appropriately cited as authority in Title II cases, and vice versa. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F.App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

**III.     Issues on Appeal**

Plaintiff raises two issues on appeal: (1) that the ALJ failed to consider the medical opinion of J. Douglas Duke, D.O.; and (2) that the ALJ failed to consider Plaintiff's diabetic ulcers under Listing 8.04. (Doc. 14 at pp. 10, 12). The Commissioner conversely maintains that Dr. Duke did not issue a "medical opinion" as that term is defined in the regulations, that the ALJ properly considered all of the relevant evidence in assessing Plaintiff's RFC, and that Plaintiff failed to meet her burden of showing impairments that met or equaled Listing 8.04 during the relevant period. (Doc. 15 at pp. 5-7 & 9).

**IV.     Discussion**

    **A.     Failure to Consider the Medical Opinion of Dr. J. Douglas Duke**

On April 15, 2019, Plaintiff presented to Flowers Hospital for a "Non healing right foot diabetic ulcer." (Tr. 608). Plaintiff's "Active Problems" were listed as: "Non-pressure chronic ulcer of other part of right foot limited to breakdown of skin"; "Type 2 diabetes mellitus with foot ulcer"; and "Type 2 diabetes mellitus with diabetic neuropathy, unspecified." (Tr. 609, 612). Dr. Duke examined Plaintiff and performed a skin/subcutaneous tissue level surgical debridement that required no pain control and caused no bleeding. (Tr. 609). Plaintiff reported that her pain level during and after the procedure was zero. (*Id.*). Dr. Duke advised Plaintiff to clean the wound, change the dressing every two to three days, to avoid pressure at the wound site, and to return in one week. (Tr. 610). Under "Consults," Dr. Duke noted "Dothan Brace Shop for front off loading shoe." (*Id.*). For "Compression/Edema Control," Dr. Duke advised Plaintiff to "[e]levate leg(s) as much as possible." (*Id.*).

Plaintiff contends that the ALJ's decision violated 20 C.F.R. § 404.1520c(a)-(b) because it neither mentioned nor provided an analysis of Dr. Duke's "medical opinion" that Plaintiff

6

"[e]levate her leg(s) as much as possible." (Doc. 14 at p. 11). Plaintiff thus argues that there is no way to determine whether the ALJ properly considered Dr. Duke's opinion in determining Plaintiff's RFC and that such error warrants remand. (*Id*. at p. 12). On the other hand, the Commissioner contends that Dr. Duke's comment was merely a "recommendation" and not a "medical opinion" as that term is defined in the regulations. (Doc. 15 at pp. 6-7). The Commissioner further contends that even if Dr. Duke's recommendation could be considered a "medical opinion" under the regulations, the lack of a discussion was harmless error, *i.e.*, the statement was made after Plaintiff's date last insured, was given only in relation to helping Plaintiff recover from a minor surgical procedure on her foot, and did not indicate that the recommendation was meant to apply for an extended period satisfying the twelve-month duration requirement. (*Id*. at 8).

Because Plaintiff filed her claim on April 5, 2018 (Tr. 15), the court must refer to the revised regulations applicable to claims filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c; *see also* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the revised regulations, the agency "will articulate how [it] considered the medical opinions and prior administrative medical findings." 20 C.F.R. § 404.1520c(a). The agency also "will articulate in [its] determination or decision how persuasive [it] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." 20 C.F.R. § 404.1520c(b).

The term "medical opinion" is defined under the new regulations as follows:

A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: . . .

> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

7

> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2).  Section 404.1513(a)(3) contains a separate definition for what is termed "[o]ther medical evidence," which is defined as "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."  *Id*. at § 404.1513(a)(3).

Dr. Duke's statement that Plaintiff should "[e]levate [her] leg(s) as much as possible" simply does not constitute a "medical opinion" under the revised regulations.  The statement contains no reference whatsoever to what Plaintiff "can still do despite [her] impairment(s) and whether [she has] one or more impairment-related limitations or restrictions" to perform the physical, mental, environmental and other demands of work.  *See* 20 C.F.R. § 404.1513(a)(2)(i)-(iv).  Accordingly, Dr. Duke's statement is more properly characterized as "other medical evidence" that did not require the ALJ to specifically articulate consideration or persuasiveness. *See, e.g., Bartlett v. Kijakazi*, No. CV421-067, 2022 WL 4350437, at *4 (S.D. Ga. Aug. 30, 2022) (concluding that, because the medical report did not contain any statement about what the plaintiff "can still do despite [her] impairment(s)," it was not a medical opinion and the ALJ was not required to provide a reasoned explanation for discounting it); *Castro v. Saul*, No. 7:20-CV-35-D, 2021 WL 4190640, at *8 (E.D.N.C. Aug. 31, 2021), *report and recommendation adopted sub nom*.

*Castro v. Kijakazi*, No. 7:20-CV-35-D, 2021 WL 4189618, at *6-7 (E.D.N.C. Sept. 14, 2021) (where the doctor noted that plaintiff suffered from lymphedema of both lower extremities and instructed plaintiff to elevate her legs where possible, while seated or recumbent, but made no mention of whether or how this would impact or limit plaintiff's ability to work, the court concluded that the notes did not meet the regulatory definition of medical opinion requiring specific articulation by the ALJ); *Dye v. Comm'r of Soc. Sec.*, No. 5:20-CV-459, 2022 WL 970186, at *4 (M.D. Fla. Mar. 31, 2022) (finding that doctor's statements were not medical opinions as the doctor's letter did not assess the extent to which the plaintiff could perform any particular function in a work setting and therefore did not constitute medical opinions for purposes of the applicable regulatory regime); *Humber v. Comm'r of Soc. Sec.*, No. 2:20-CV-00501, 2021 WL 4409092, at *5 (N.D. Ala. Sept. 27, 2021) ("An ALJ is not required to articulate his evaluation of 'other medical evidence' in the same way or to the same degree as a medical opinion.") (citing 20 C.F.R. § 404.1520c).[5]

Although the particular statement identified by Plaintiff was not specifically referenced in the final decision, it is clear that the ALJ properly considered the medical evidence from Dr. Duke in determining Plaintiff's RFC.  *See* 20 C.F.R. § 404.1520(a)(3) ("We will consider all evidence in your case record when we make a determination or decision whether you are disabled."); *Dye*, 2022 WL 970186, at *4.  In discussing the medical evidence, the ALJ cited Exhibit 16F, which includes Dr. Duke's medical report, stating that the ALJ had considered and found persuasive "the other objective medical findings in Exhibits 5F, 12F, 13F, 14F, 15F, 16F, 17F and 18F as they

---

[5] Plaintiff's citation to *Williams v. Astrue*, No. 3:09-cv-238 (M.D. Ala. May 12, 2010), is inapposite, as *Williams* pre-dates the revised regulations and merely involves a vocational expert's opinion in response to a hypothetical question that contained, among other factors, a need for the claimant to elevate legs. (Doc. 14 at p. 11; Doc. 14-1).

establish on the basis of supportive objective physical examination findings and diagnostic studies, evidence of advanced severe sensorimotor polyneuropathy, fractured toe on the right foot, diabetes type 2, benign paroxysmal vertigo, diabetic gastroparesis, and obesity." (Tr. 29). The ALJ also noted that "in Exhibit 13F, January 2019 treatment records demonstrate treatment of right foot metatarsal fracture and surrounding ulcer" and that "a CT scan was ordered which also revealed right foot fourth metatarsal demonstrated a fracture with surrounding periostitis and callus in keeping with subacute fracture." (Tr. 29). The ALJ additionally observed in pertinent part: "The record indicates surgical intervention was required and debridement of the right foot ulcer was completed. However, follow-up treatment records in Exhibits 14F-18F demonstrate the claimant experienced no post debridement limitations." (Tr. 29). The ALJ therefore concluded, "[b]ased on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by the other objective medical findings in Exhibits 12-5F, 6F, 7F, 11F, 12F, 13F, and 14F-18F for the reasons stated above." (Tr. 29).

"[T]he task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor." *Moore v. Soc. Sec. Admin., Comm'r*, 649 F.App'x 941, 945 (11th Cir. 2016); *Beegle v. Soc. Sec. Admin., Com'r*, 482 F.App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."); *Frank v. Comm'r of Soc. Sec.*, No. 2:20-CV-962, 2022 WL 598036, at *8 (M.D. Fla. Feb. 10, 2022), *report and recommendation adopted*, No. 2:20-CV-962, 2022 WL 596833 (M.D. Fla. Feb. 25, 2022) ("[T]here is no requirement that an ALJ base the RFC finding on a medical source's opinion."). "[T]o find the ALJ's RFC assessment supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician." *Smoke v. Kijakazi*, No. CV 21-0206, 2022 WL

721532, at *4 (S.D. Ala. Mar. 9, 2022). Moreover, an ALJ "is not required to specifically address every aspect of an opinion or every piece of evidence in the record." *Coley v. Comm'r of Soc. Sec.*, 771 F.App'x 913, 917 (11th Cir. 2019). "'[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision enables the district court 'to conclude that the ALJ considered the claimant's medical condition as a whole.'" *Wesley v. Kijakazi*, No. 2:20-CV-02073, 2022 WL 3588323, at *18 (N.D. Ala. Aug. 22, 2022) (quoting *Adams v. Comm'r, Soc. Sec. Admin.*, 586 F.App'x 531, 533 (11th Cir. 2014)) (internal quotation marks and brackets omitted in original).

Here, the record reflects that the ALJ properly considered all medical and other relevant evidence, including that of Dr. Duke, when assessing Plaintiff's RFC. (Tr. 23-29). Plaintiff therefore has failed to show that the ALJ committed any error in that regard.

**B.  Failure to Consider Plaintiff's Diabetic Ulcers Under Listing 8.04**

Plaintiff next argues that the ALJ erred by failing to consider that her impairments equaled Listing 8.04. (Doc. 14 at p. 12). Specifically, Plaintiff asserts that the non-healing ulcerations on her foot equal Listing 8.04 when combined with her advanced severe sensorimotor polyneuropathy. (*Id*. at pp. 14-15). The Commissioner contends that, even assuming the impairments might equal Listing 8.04, Plaintiff failed to establish that all elements were satisfied before the expiration of her insured status on March 31, 2019, *i.e.*, Plaintiff cited only a single occurrence of a non-healing ulcer on her right foot and thus failed to show that she had "extensive skin lesions," experienced "very serious limitations" in her functional abilities, or engaged in "continuing treatment as prescribed," as these terms are used for Listing 8.04. (Doc. 15 at p. 11). The Commissioner also contends that Plaintiff failed to put the ALJ on notice that Listing 8.04 was even at issue. (*Id*. at 12).

"To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (internal citation omitted); *see* 20 C.F.R. § 404.1525(a)-(d); 20 C.F.R. § 404.1526(a). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id*. at 531 (emphasis in original). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id*. And the duration requirement means that the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509.

According to 20 C.F.R. § Pt. 404, Subpt. P, App.1 § 9.00(B)(5)(a)(ii), poorly healing bacterial and fungal skin infections that occur due to diabetes are evaluated under 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 8.00. Listing 8.00, entitled Skin Disorders, explains that in assessing the severity of the claimant's skin disorders, the agency will "generally base [its] assessment of severity on the extent of [the claimant's] skin lesions, the frequency of flareups of [the claimant's] skin lesions, how [the claimant's] symptoms (including pain) limit [the claimant], the extent of [the claimant's] treatment, and how [the claimant's] treatment affects [the claimant]." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 8.00(C). Listing 8:04 as cited by Plaintiff pertains to "Chronic infections of the skin or mucous membranes, with extensive fungating or extensive ulcerating skin lesions that persist for at least 3 months despite continuing treatment as prescribed." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 8.04. "Extensive skin lesions" are defined as those "that involve multiple body sites or critical body areas, and result in a very serious limitation." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 8.00(C)(1). Examples of extensive skin lesions that result in a very

serious limitation include (1) "[s]kin lesions that interfere with the motion of [the claimant's] joints and that very seriously limit [the claimant's] use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity;" (2) "[s]kin lesions on the palms of both hands that very seriously limit [the claimant's] ability to do fine and gross motor movements;" and (3) "[s]kin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit [the claimant's] ability to ambulate."  20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 8.00(C)(1)(a)-(c).  The agency also assesses "the effects of medication, therapy, surgery, and any other form of treatment [the claimant] receive[s]."  20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 8.00(C)(4).  Moreover, the claimant "must follow continuing treatment as prescribed for at least 3 months before [the claimant's] impairment can be determined to meet the requirements of a skin disorder listing."  20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 8.00(C)(4)(b).

Plaintiff cites only a single occurrence of a non-healing ulcer on her right foot, which was first mentioned in medical records from January 2019.  (Tr. 544, 549-52, 586).  Plaintiff was diagnosed with "[a]therosclerosis of artery of extremity with ulceration" and "nonpressure chronic ulcer."  (Tr. 588).  The ulcer was surgically debrided, and Plaintiff was referred to wound care. (Tr. 549, 590).  On January 31, 2019, Plaintiff returned for follow up of her "diabetic foot wound," at which time the duration was listed as "4 weeks"—with improving symptoms.  (Tr. 591).  On February 14, 2019, Dr. Pfeifer advised Plaintiff to resume wound care starting February 21, 2019. (Tr. 598).  On March 12, 2019, Plaintiff presented to Dr. Tyler Black, who noted that Plaintiff had "no rashes, ulcers, icterus or other lesions" and that Plaintiff had a "boot and dressing to right foot."  (Tr. 566-67).  On April 15, 2019, Dr. Pfeifer noted that the wound was "still present" and referred Plaintiff to Flowers Hospital for her "non-healing right foot diabetic ulcer."  (Tr. 603-04, 08).  Dr. Pfeifer noted the severity of Plaintiff's symptoms at that time as "moderate" and as having

improved since her last visit. (Tr. 604). On April 15, 2019, Plaintiff's wound was debrided by Dr. Duke, and Plaintiff was fitted for a special "front off loading shoe." (Tr. 609-10). Dr. Duke described a single, non-healed ulcer on her right foot and specifically noted that the "[t]he skin is without palpable nodules, induration or tenderness." (Tr. 609).

Such medical records provide substantial evidence to support the ALJ's implied finding that Plaintiff did not show that her impairments met or equaled Listing 8.04 prior to the date last insured. *See Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986) ("There may be an implied finding that a claimant does not meet a listing."). The record reflects that Plaintiff failed to show that she had "extensive skin lesions" involving multiple body sites or critical body areas or that resulted in very serious limitations in her functional abilities, or that skin lesions interfered with the motion of her joints or limited her use of any extremity, or that she had lesions on the soles of both feet that very seriously limited her ability to ambulate. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 8.00(C)(1)(a)-(c). Not only that, the record fails to reflect that Plaintiff could satisfy the duration requirement of 20 C.F.R. § 404.1509. Ultimately, the court is satisfied that the ALJ did take into consideration all of the medical evidence of Plaintiff's foot ulcer and simply found it to be insufficient: "[f]ollow-up physical examinations however, failed to demonstrate the claimant continued to experience any significant symptoms post-debridement prior to the date last insured." (Tr. 25, 564-671). *See Prince v. Comm'r, Soc. Sec. Admin.*, 551 F.App'x 967, 971 (11th Cir. 2014); *Gray ex rel. Whymss v. Comm'r of Soc. Sec.*, 454 F.App'x 748, 750 (11th Cir. 2011) ("Although the ALJ must consider the Listings, there is no requirement that the ALJ mechanically recite the evidence leading to his ultimate determination. A finding that a claimant's impairments are not contained in the Listings may be implied from the ALJ's decision.") (citation omitted).

Finally, the court must note that Plaintiff failed to put the ALJ on notice that Listing 8.04 was at issue. The record reflects that Plaintiff did not mention skin problems as a basis for her alleged disability, nor did Plaintiff at any time allege that her impairments met or equaled Listing 8.04. (Tr. 37-67, 68-69, 162, 175-82, 202-03, 206). Because Plaintiff did not raise the issue, and especially given that she at all relevant times was represented by counsel, an additional basis exists for the court to find that ALJ was not required to specifically address the Listing. *See Davenport v. Astrue*, 403 F.App'x 352, 354 (11th Cir. 2010) (noting claimant did not allege disability due to condition addressed by Listing 5.08 either in application or at her hearing, and evidence supported ALJ's implicit finding that claimant's impairments did not meet or equal a listing); *Robinson v. Astrue*, 365 F.App'x 993, 995-96 (11th Cir. 2010) (holding ALJ had no duty to consider plaintiff's chronic fatigue syndrome ("CFS") diagnosis where plaintiff was represented and did not allege she was disabled due to CFS either when she filed her claim or at her hearing and also finding that plaintiff provided no indication that her CFS created functional limitations beyond those found by the ALJ); *East v. Barnhart*, 197 F.App'x 899, 902 (11th Cir. 2006) ("Although the ALJ must consider all the impairments the claimant alleges in determining whether the claimant is disabled, the ALJ need not scour the medical record searching for other impairments that might be disabling, either individually or in combination, that have not been identified by the claimant.") (citation omitted).

Plaintiff has shown no error, and substantial evidence supports the ALJ's implicit findings that Plaintiff's impairments did not equal any of the Listings as of the date last insured. [6]

---

[6] No serious argument can be made that Plaintiff's impairments meet Listing 8.04. "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings … ." *Wilson v.* 284 F.3d 1219, 1224 (11th Cir. 2002) (citation omitted); 20 C.F.R. § 404.1525(a)-(d); 20 C.F.R. § 404.1526(a).

## V. Conclusion

After carefully and independently reviewing the record, and for the reasons stated above, the court concludes that the Commissioner's decision is due to be AFFIRMED. A separate judgment will issue.

DONE this the 5th day of October 2022.

**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**